# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARTY WALSH, ) | |
| SECRETARY OF LABOR, ) | |
| U.S. DEPARTMENT OF LABOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:20-CV-988 RLW |
| ) | |
| MASSONTI HOMECARE, LLC, ) | |
| d/b/a GRISWOLD HOME CARE, ) | |
| and THOMAS CONTI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Compel (ECF No. 52) and Secretary's Motion to Compel Discovery from Defendant Massonti HomeCare d/b/a Griswold Home Care (hereinafter, "Griswold") (ECF No. 53). These matters are fully briefed and ready for disposition. The Court denies most of the Secretary's Motion to Compel and all of Defendants' Motion to Compel

## LEGAL STANDARD FOR MOTION TO COMPEL[1]

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1). The Federal rules further provide for limits on discovery requests. Specifically,

---

[1] The Court provided a full background of this litigation in its prior Memorandum and Order (ECF No. 70).

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii). Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery.

## DISCUSSION

**A. Secretary's Motion to Compel Discovery from Defendant Massonti HomeCare LLC d/b/a Griswold Home Care (ECF No. 53)**

**1. Requests for Production Nos. 5, 6, 7, 12, 13**

Request numbers five, six, and seven seek all documents required by Griswold to be submitted by a caregiver to initiate his or her relationship with Griswold; all documents used by Griswold to evaluate screen, or investigate new caregivers; and all documents given to, shown to, or requiring a signature from a caregiver upon beginning his or her relationship with Griswold. In response, Griswold produced an "exemplar", *i.e.*, a blank copy of each of the documents listed. The Secretary asks the Court to compel the production of documents that actually have been filled-out by caregivers or potential caregivers. (ECF No. 53 at 4). The Secretary claims that these documents are relevant because they "suggest objective criteria played a significant role in the decision to accept a caregiver on the registry". (ECF No. 53 at 4). In addition, the Secretary claims it requires the Caregiver Agreement because it is relevant to Defendants' argument that caregivers are not their employees. (ECF No. 53 at 4-5).

In requests numbers 12 and 13, the Secretary requests all documents used by Griswold to evaluate, screen, or gather information on new clients and all documents given to, shown to, or

requiring a signature from a client upon beginning his or her relationship with Griswold. Again, Griswold only produced blank forms (exemplars). The Secretary claims he needs all records because Griswold claims that these clients are the actual employers of the caregivers at issue, and are relevant to this determination. The Secretary further argues that he is only requesting approximately 11 documents per client, so these requests are not overly burdensome.

In response, Defendants claim that they have 260 caregivers who perform independent contractor services through their registry. (ECF No. 62 at 4). Defendants argue that they would have to locate and produce over 10,000 documents across the group of caregivers and clients, including documents related to 180 caregivers that the Secretary knew about but decided not to include in his Complaint. (ECF No. 62 at 5). Defendants claim that the exemplars show the information requested and any additional, requested documents do not show the subjective reasons caregivers may have been rejected from the registry or elucidate whether caregivers are employees or independent contractors. (ECF No. 62 at 5). Indeed, Defendants argue that they provided information regarding the bases for rejecting caregivers in their interrogatory answers. (*Id.*) Defendants claim that the additional massive document production far outweighs any perceived benefit. In addition, Defendants state that they have no reason to believe that any caregiver did not sign the Caregiver Agreement and verification of such signed documentation does not warrant this overly burdensome production. (ECF No. 62 at 6). Defendants argue that, to the extent that a production is required, it should be limited to a sampling of no more than ten caregivers. (ECF No. 62 at 6). Finally, in response to the Secretary's argument that this document production would show control over these caregivers, Defendants note that the Secretary does not explain how the documents signed by clients would prove Defendants' alleged control over such caregivers.

The Court agrees that the Secretary has not demonstrated how the requested information would not be unreasonably cumulative. Defendants have identified the information requested from each of the caregivers, and the Secretary has not shown how each individual caregiver's documentation would advance the Secretary's case. The Court finds that documents related to caregivers who are not included in the Complaint are overly burdensome and irrelevant. To the extent that these documents may show why caregivers were rejected from Defendants' registry, Defendants have already provided that information in a more accessible format (a response to an interrogatory) and duplication is unnecessary. The Court notes that Defendants have represented that caregivers all signed these types of agreements and the Secretary's need to "verify" such representation does not outweigh such a burdensome production. Finally, the Court finds that these documents will not provide any information that elucidate the employer relationship. Given the lack of information provided by the requested documents, the Court denies the Secretary's Motion to Compel documents requests numbers five, six, seven, twelve, and thirteen.

**2. Request for Production No. 8**

Document request number eight asks for all staffing forms from LTCPayroll or any other documents from third-party payroll companies showing the rate of pay for the caregivers that are/were in Griswold's registry. Griswold produced only forms relating to the 45 caregivers listed in Appendix A to the Secretary's Complaint, instead of all caregivers during the relevant time period. The Secretary claims that he needs documents related to all of the caregivers to determine if additional caregivers, besides the 45 caregivers listed in Appendix A, are entitled to back wages. (ECF No. 53 at 6).

In response, Defendants note that they produced approximately 387 "rate recording form" documents for the 45 caregivers identified in Exhibit A to the Complaint. As stated, the

Secretary argues he should receive additional documentation for the more than 200 additional caregivers not named in the Complaint, including those caregivers for which the Secretary already obtained pay information but did not include in the Complaint. (ECF No. 62 at 8). Defendants argue that The Secretary should not be allowed to propound discovery, which would serve to expand the claims against Defendants, pursuant to an FLSA Section 17 cause of action, particularly where The Secretary conducted a multi-year investigation prior to filing suit and declined to pursue relief for those individuals. In addition, the deadline for amendment of pleadings was January 19, 2021, so any such amendment by The Secretary would be untimely, especially since he knew about these additional claims prior to filing suit. (ECF No. 62 at 9-10).

The Court denies the motion to compel document request number eight. The Secretary chose not to pursue claims based upon 200 additional caregivers after a long and extensive investigation. The Court will not permit backdoor discovery when the Secretary already decided against bringing claims on behalf of these individuals.

### 3. Request for Production No. 10

Request number ten seeks documents used by Griswold employees showing schedules for all the caregivers in Griswold's registry. In response, Griswold refused to produce similar documents because they are "client", not "caregiver" schedules. The Secretary argues that the hours caregivers work are relevant to the Secretary's back wages claim and caregiver schedules provide a "strong indicia of control." (ECF No. 53 at 7).

Defendants argue that the "caregiver schedule" is actually a "client calendar" that tracks the hours requested by Defendants' clients, not to track the work hours of a specific caregiver. Defendants further contend that these documents do not provide any indicia of control, but merely show which caregivers agreed to work for particular clients, without showing how these

agreements occurred (ECF No. 62 at 10).  Finally, Defendants argue that these document requests are overly broad because nearly 500 clients have been associated with Defendants' registry over the relevant period.  Thus, Defendants would have to review and produce thousands of monthly calendars in response to this request, most of which are for caregivers that the Secretary chose not to include in the Complaint.  (ECF No. 62 at 10-11).  Defendants argue this production would be disproportional to the Secretary's $110,000 claim for damages.  (ECF No. 62 at 11).

The Court will allow a limited discovery regarding these client calendars.  The Court agrees that these client calendars may have information related to the number of hours worked by the caregivers, which is central to this litigation.  The Court, however, limits the discovery to those caregivers on whose behalf the Secretary has brought this lawsuit, not the additional 200 caregivers.  The Court finds that this decision balances the Secretary's need for information related to the number of hours worked, while limiting the scope and number of documents produced.

### 4. Request for Production No. 14

In request number 14, the Secretary requests all client care plans for all clients who have used caregivers through Griswold's registry.  The Secretary argues that all care plans are highly relevant to the issue of control and the employment analysis.  (ECF No. 53 at 9-10).

In response, Defendants note that they have produced at least 12 redacted Client Care Plans, as attachments to emails responsive to other requests.  (ECF No. 62 at 11).  Defendants argue that the Secretary's request for production of every Client Care Plan for the nearly 500 clients associated with Defendants' registry seeks irrelevant and overly broad information and is disproportional to the requested relief.  (*Id*.)  Defendants argue that The Secretary failed to cite to

any specific content of the Client Care Plans that demonstrates Defendants' control over caregivers and the services they provide. (*Id.*)  Defendants note that the Secretary's own guidance regarding caregiver registries provides that "[a] registry does not plan and provide care for the client, but might seek information concerning the type of care the client needs for matching purposes" without creating an employment relationship.  (ECF No. 62 at 12 (citing Department of Labor, Wage and Hour Division, Field Assistance Bulletin No. 2018-4, July 13, 2018, at 5)).  Finally, Defendants argue that production of the requested documents is unduly burdensome because Client Care Plans contain sensitive medial information about clients' medical conditions and personal limitations.  (ECF No. 62 at 12).  Defendants contend the potential damage to their relationships with their clients by disclosing such information far outweighs any limited information gleaned by The Secretary from the documents. (ECF No. 62 at 13).

The Court holds that the Client Care Plans are not relevant to this litigation.  The Client Care Plans contain confidential and sensitive client information, and the Secretary has not demonstrated that they contain information relevant to the legal determination regarding the caregiver's employer.  Accordingly, the Court denies the motion to compel request for production number fourteen.

### 5. Interrogatory No. 5

The Secretary requested the contact information (name, address, telephone number, email address, and the time period used for the registry's services) for all clients from April 28, 2018 to the present.  (ECF No. 53 at 10).  The Secretary claims that these clients, who admittedly may be elderly and infirm, are "highly relevant fact witnesses" who may have information related to pay

negotiations, scheduling, and other issues relevant to this case. (ECF No. 53 at 10). Defendants refused to turn over this information.

In response, Defendants argue that the Secretary's request is overbroad and seeks irrelevant information, particularly identification of every client, even if the client did not receive services from the caregivers in question. (ECF No. 62 at 13). Further, Defendants contend the requested information is disproportional to the needs of the case, constitutes harassment, and would embarrass Defendants' clients. (ECF No. 62 at 13-14). In addition, Defendants argue that The Secretary can obtain the information sought from more convenient sources that do not present the same risk to Defendants' relationships with its clients, *e.g.*, from third-party payroll vendors. (ECF No. 62 at 15).

The Court denies this broad and far-reaching interrogatory for all client contact information during the relevant period. As previously discussed, this interrogatory seeks information regarding all clients, including ones who worked with caregivers on whose behalf the Secretary did not bring this litigation. Therefore, the Court finds this interrogatory to be overbroad and unduly burdensome. Further, the Court notes that less intrusive means of finding this information are available. For example, the Court would look more favorably upon a request for certain, limited client information, based upon the Secretary's already in-depth investigation. The Court denies the motion to compel interrogatory number five.

B. **Defendants' Motion to Compel (ECF No. 52)**

1. **Request for Production Nos. 2, 3, 4**

Defendants' request for production number two seeks communications between the Secretary and the U.S. Department of Health and Human services between 2013 and 2015[2] "questioning the viability of Plaintiff's Home Care Rule that took effect on January 1, 2015." The Secretary objected because the Request (1) contained undefined terms, (2) was overbroad and unduly burdensome, and (3) included documents protected by the attorney-client privilege, work product privilege, and the deliberative process. Defendants' request for production number three seeks communications regarding the validity of the Secretary's Home Care Rule in light of *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). The Secretary again objected because the Request (1) contained undefined terms, (2) was overbroad and unduly burdensome, and (3) included documents protected by the attorney-client privilege, work product privilege, and the deliberative process. Defendants' request for production number four seeks communications within the Department of Labor, Wage and Hour Division, including the Wage and Hour Division's former Administrator Cheryl Stanton, regarding the Home Care Rule since June 2020. Defendants claim that "senior officials within the Wage and Hour Division, including Ms. Stanton, engaged in discussion during the pertinent time period regarding the propriety of the Home Care Rule and whether it was a permissible reading of the FLSA's Companionship and Live-In Exemptions." (ECF No. 52 at 7). Defendants argue that such statements by senior Wage and Hour Division officials would be admissions regarding one of the central claims in this case. *Id*.

---

[2] Defendants initially requested information from 2013 to the present, but agreed to narrow the request as part of the meet and confer process. (ECF No. 52 at 3, n.2).

In response, the Secretary maintains that internal or external discussions about regulations—in particular discussions that occurred after promulgation of those regulations—are not relevant to the issues in this case. (ECF No. 59 at 2-3). The Secretary claims that these materials are irrelevant because Defendants are not challenging the Home Care Rule itself, but rather the Department's application of the regulations to Griswold. (ECF No. 59 at 4). The Secretary also claims that these requests are overbroad, unduly burdensome, privileged under attorney-client and work product doctrines, and privileged under the government's deliberative process privilege. (ECF No. 59 at 3). The Secretary notes that it would be difficult to track communications across the entire Department of Labor and the Office of Solicitor. Further, the Secretary contends the documents requested fall squarely within the type of material protected under the deliberative process, attorney work product, and/or attorney-client privileges, "as they reveal pre-decisional opinions, impressions, recommendations, and deliberations of Department of Labor officials, including communications between officials from the Wage and Hour Division and attorneys from the Office of the Solicitor." (ECF No. 59 at 8).

The Court finds that requests numbers two, three and four seek evidence that is not reasonably calculated to lead to the discovery of admissible evidence. The Court agrees that the requested information would be protected by the attorney-client privilege, the work product privilege, and the deliberative process privilege. To the extent that any requested information would not be protected by such privileges, the Court finds that the benefit from such dearth of discoverable information is outweighed by the burden that would be placed on the Secretary. The Court denies the motion to compel document requests two, three, and four.

### 2. Request for Production Nos. 5-6

Defendants' requests for production numbers five and six seek documents sufficient to identify each person who spent time working on Secretary's investigation of Defendants and the amount of time spent on a day-by-day basis. Defendants argue that the Secretary did not object to these requests, and any objections are waived. (ECF No. 52 at 8). Defendants argue that they served these requests to identify potential witnesses and determine which of these individuals Defendants may wish to depose. (ECF No. 52 at 8-9). Although the Secretary produced a "Case Diary," showing some activities that Wage and Hour Division employees conducted as part of the investigation, Defendants argue the Secretary's Case Diary may provide an incomplete depiction of the investigation. (ECF No. 52 at 9). Defendants further argue that the Secretary should produce time logs and records from the Secretary's WHISARD system, which are sortable by case. Defendants claim that this would not impose any undue burden on Secretary.

In response, the Secretary argues that such time records from the WHISARD system do not exist and would be impossible to create. (ECF No. 59 at 11). In addition, the Secretary argues that Defendants have not identified how identifying the amount of time each person spent investigating Defendants is relevant to this case or remotely proportional to the needs of the case. (ECF No. 59 at 11).

The Court denies requests for production numbers five and six. The Court finds that Defendants have not identified any information that could not be obtained from a more limited means, such as a discovery request seeking potential witnesses. In addition, the Court notes that the information does not exist in its requested form and, thus, the document requests are overly burdensome for this additional reason. *See Pennington v. Integrity Commc'ns, Inc.*, No.

1:12CV5 SNLJ, 2014 WL 2136000, at *2 (E.D. Mo. May 22, 2014) ("The Court cannot compel the production of documents that do not exist.").

### 3. Request for Production No. 7

Defendants' request for production number seven seeks documents identifying settlements in which the Secretary "accepted a flat rate as incorporating payment for overtime work to satisfy the employer's FLSA overtime payment obligations." (ECF No. 52 at 9). Defendants contend an arrangement whereby a caregiver could be paid a "flat rate" for each day based on the expected number of hours worked is permissible under the Secretary's guidance. (ECF No. 52 at 9-10) (citing Wage and Hour Division Opinion letter No. FLSA 2020-20)). Thus, Defendants request documents to prove that the Secretary has allowed a flat rate framework in other cases, which would negate his position in this case. (ECF No. 52 at 10).

In response, the Secretary asserts that "there is no central repository for such information." Secretary claims to be confused by Defendants' use of the term "flat hourly rate" when Defendants have paid their employees a "day rate". (ECF No. 59 at 12). Thus, the Secretary claims that any use of a "flat hourly rate is irrelevant". (*Id*.) In addition, the Secretary argues that Defendants' unsubstantiated hope that such settlements (and documents) exist is insufficient for the Court to allow such a fishing expedition, particularly when it is unclear how such an "admission" would be binding on the Secretary.

The Court denies this request for documents. Defendants are requesting information regarding settlements that may not exist and without providing information on how such settlements might have a realistic effect on this litigation. The Court will not allow such a fishing expedition. The Court denies the motion to compel request for production number seven.

### 4. Attorney's Fees

Finally, Defendants argue that the Court should award them their attorneys' fees because the Secretary did not raise any relevance-based objections to any of Defendants' requests. (ECF No. 52 at 10).

In response, the Secretary argues that its positions are "substantially justified" under Fed. R. Civ. P. 37 because he participated in the discovery process in good faith and only objected or withheld documents when he genuinely believed that such actions were warranted. (ECF No. 59 at 13-14).

The Court denies Defendants' request for attorneys' fees since the Court denied all of Defendants' requested relief in their Motion to Compel.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel (ECF No. 52) is **DENIED** and Secretary's Motion to Compel Discovery from Defendant Massonti HomeCare d/b/a Griswold Home Care (ECF No. 53) is **GRANTED**, in part, and **DENIED**, in part, as outlined above. Griswold must supplement its response to request for production number 10 within fourteen (14) days.

Dated this 3rd day of March, 2022.

_Ronnie L. White_
———————————————
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE